**BRODSKY & SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MENGSHENG KU,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>NEOPHOTONICS CORPORATION., TIMOTHY S. JENKS, CHARLES J. ABBE, YANBING LI, BANDEL L. CARANO, RAJIV RAMASWAMI, MICHAEL J. SOPHIE, IHAB S. TARAZI, SHERI L. SAVAGE, and KIMBERLY Y. CHAINEY,<br><br>　　　　　Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Mengsheng Ku ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

### SUMMARY OF THE ACTION

1.  Plaintiff brings this stockholder action against NeoPhotonics Corporation ("NeoPhotonics" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,", collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Lumentum Holdings Inc. ("Parent") through

- 1 -
COMPLAINT

merger vehicle Neptune Merger Sub, Inc. ("Merger Sub") (collectively with "Parent", "Lumentum") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction valued at approximately $918 million (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a November 8, 2021, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Lumentum will acquire all of the remaining outstanding shares of NeoPhotonics' common stock at a price of $16.00 per share in cash. As a result, NeoPhotonics will become an indirect wholly-owned subsidiary of Lumentum.

3. Thereafter, on December 1, 2021, NeoPhotonics filed a Preliminary Proxy Statement on Schedule PREM14A (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4. The Proposed Transaction is unfair for a number of reasons. Significantly, the Preliminary Proxy Statement describes an insufficient process that dragged on for several years, and the Board of NeoPhotonics seemingly determined to sell to Lumentum even after the latter broke off negotiations in a failed attempt to buy a separate entity.

5. Additionally, it appears as though the Board has entered into the Proposed Transaction to procure for themselves and senior management of the Company significant and immediate benefits. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

6. In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement on December 1, 2021 with the SEC in an effort to solicit Plaintiff to vote his NeoPhotonics shares in favor of the Proposed Transaction. The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Preliminary Proxy Statement

omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for NeoPhotonics, provided by the Company to the Company's financial advisor Union Square Advisors LLC ("Union Square"); and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Union Square and provided to the Board.

7. Accordingly, this action seeks to enjoin the Proposed Transaction.

8. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

**PARTIES**

9. Plaintiff is a citizen of New Jersey and, at all times relevant hereto, has been a NeoPhotonics stockholder.

10. Defendant NeoPhotonics is a leading developer and manufacturer of lasers and optoelectronic solutions that transmit, receive and switch high-speed digital optical signals for Cloud and hyper-scale data center internet content providers and telecom networks. NeoPhotonics is incorporated under the laws of the State of Delaware and has its principal place of business at 3081 Zanker Road, San Jose, CA 95134. Shares of NeoPhotonics common stock are traded on the New York Stock Exchange under the symbol "NPTN".

11. Defendant Timothy S. Jenks ("Jenks") has been a Director of the Company at all relevant times. In addition, Jenks serves as the Company's Chief Executive Officer ("CEO"), Chairman of the Company Board, and President.

12. Defendant Charles J. Abbe ("Abbe") has been a director of the Company at all relevant times.

13. Defendant Yanbing Li ("Li") has been a director of the Company at all relevant times.

14. Defendant Bandel L. Carano ("Carano") has been a director of the Company at all relevant times.

15. Defendant Rajiv Ramaswami ("Ramaswami") has been a director of the Company at all relevant times.

16. Defendant Michael J. Sophie ("Sophie") has been a director of the Company at all relevant times.

17. Defendant Ihab S. Tarazi ("Tarazi") has been a director of the Company at all relevant times.

18. Defendant Sheri L. Savage ("Savage") has been a director of the Company at all relevant times.

19. Defendant Kimberly Y. Chainey ("Chainey") has been a director of the Company at all relevant times.

20. Defendants identified in ¶¶ 11 - 19 are collectively referred to as the "Individual Defendants."

21. Non-Party Lumentum is a major designer and manufacturer of innovative optical and photonic products enabling optical networking and laser applications worldwide. Lumentum is headquartered in San Jose, CA and its shares are traded on the Nasdaq Stock Exchange under the symbol "LITE."

22. Non-Party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

23. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

24. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this

District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

25. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because NeoPhotonics maintains its principal offices in this district, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

26. NeoPhotonics develops, manufactures, and sells optoelectronic products that transmit and receive high speed digital optical signals for cloud and hyperscale data center internet content provider and telecom networks worldwide. It offers high speed products, including transmitter, receiver, and switching products for 400G and optical transmission applications over distances of 2 to 2,000 kilometers; ultra-narrow linewidth tunable lasers that generate ultra-pure wavelength or color for coherent transmission; and integrated coherent receivers (ICRs) that decode the phase and polarization encoded coherent optical signals. The Company sells its products to network equipment manufacturers through a direct sales force in North America, Europe, and Asia. The Company was formerly known as NanoGram Corporation and changed its name to NeoPhotonics Corporation in 2002. NeoPhotonics was founded in 1996 and is headquartered in San Jose, CA.

27. The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance. For example, in the August 3, 2021 press release announcing its 2021 Q2 financial results, the Company highlighted such milestones as Revenue was $65.0 million, up 7% quarter-over-quarter and Gross Margin on 15.2%.

28. Speaking on these positive results, CEO Defendant Jenks commented on the Company's positive financial results as follows, "'Building on our strong performance in the second quarter, we see accelerating growth in the back half of the year, driven by the initial ramp of 400ZR and related products adding to our 400G+ suite. We are ramping our modules and

component level products, including our Nano Tunable Laser, putting us in a good position to return to profitability.'"

29. These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by NeoPhotonics. Clearly, based upon these positive financial results and outlook, the Company is likely to have tremendous future success.

30. Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused NeoPhotonics to enter into the Proposed Transaction without providing requisite information to NeoPhotonics stockholders such as Plaintiff.

***The Flawed Sales Process***

31. As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

32. Notably, the Preliminary Proxy Statement indicates that the negotiations with Lumentum began as far back as 2016. The Preliminary Proxy Statement fails to provide adequate information as to why the Board allowed an approximate five year sales process to take place wherein the only acceptable end goal appeared to be a sale to one specific third party.

33. The Preliminary Proxy Statement further indicates that in the portion of the sales process beginning in September 2020, that after Lumentum pulled out of the process in favor of a failed attempt to acquire a separate entity, the Board seemingly halted the sales process on the Company's end to accommodate Lumentum, and did not seek further potentially interested third parties to engage in strategic alternatives. Rather, it appeared the Board simply waited for Lumentum to re-engage with it after the Parent's other deal fell through. The Preliminary Proxy Statement fails to explain why such a long and wasteful sales process was allowed to happen.

34. The Preliminary Proxy Statement does not properly indicate what powers the Strategic Committee possessed in regards to the approval of strategic alternatives, and also fails to give a timeline of the membership of Board members on the committee. This is necessary considering that the Strategic Committee was formed in January 2016, and the Preliminary Proxy Statement simply states all Board members who sat on it from that time. More precise information regarding the composition and powers of the Strategic Committee during the 2020 and 2021 portions of the sales process is required.

35. In addition, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and Lumentum, whether this agreement differed from any other agreement with potentially interested third parties discussed and/or not specifically mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained therein, including, all specific conditions, if any, under which such provisions would fall away.

36. It is not surprising, given this background to the overall sales process, that it was conducted in an inappropriate and misleading manner.

**The Proposed Transaction**

37. On November 4 2021, NeoPhotonics and Lumentum issued a joint press release announcing the Proposed Transaction. The press release stated, in relevant part:

> **San Jose, Calif., November 4, 2021** – Lumentum Holdings Inc. (NASDAQ: LITE) ("Lumentum") and NeoPhotonics Corporation (NYSE: NPTN) ("NeoPhotonics") today announced that they have entered into a definitive agreement under which Lumentum will acquire NeoPhotonics for $16.00 per share in cash, which represents a total equity value of approximately $918 million. The transaction has been unanimously approved by the Boards of Directors of both companies.
>
> The addition of NeoPhotonics expands Lumentum's opportunity in some of the fastest growing areas of the more than $10 billion market for optical components used in cloud and telecom network infrastructure. The integrated company will be

better positioned to serve the needs of a global customer base who are increasingly utilizing photonics to accelerate the shift to digital and virtual approaches to work and life, the proliferation of IoT, 5G, and next-generation mobile networks, and the transition to advanced cloud computing architectures. The combination creates a stronger partner for customers, with the ability and intent to invest strongly in innovation and manufacturing capacity.

"With NeoPhotonics, we're making another important investment in better serving our customers and expanding our photonics capabilities at a time when photonics are at the forefront of favorable long-term market trends," said Alan Lowe, Lumentum President and CEO. "At the center of our strategy is a relentless focus on developing a differentiated portfolio with the most innovative products and technology in our industry so that we can help our customers compete and win in their respective markets. Adding NeoPhotonics' differentiated products and technology and innovative R&D team is consistent with this strategy and together, we will better meet the growing need for next generation optical networking solutions."

"We are confident this transaction will make us an even better partner to our customers, while enabling our team to deliver significant, long-term value to our stockholders. We look forward to welcoming NeoPhotonics' talented team of employees to Lumentum," concluded Mr. Lowe.

"Today's announcement is an exciting milestone for NeoPhotonics," said Tim Jenks, NeoPhotonics President, CEO, and Chairman. "The increasing global demand for our ultra-pure light tunable lasers and photonics technologies for speed over distance applications is more apparent than ever, and Lumentum is the ideal partner to serve our customers on a larger scale. Lumentum recognizes the importance of NeoPhotonics' differentiated photonic technology and products, which are well positioned for accelerated growth in the coming years. The combination's complementary product portfolio, increased scale, breadth of customer application knowledge, and R&D capabilities will accelerate innovation, better serve customers, and deliver significant and immediate value to our stockholders. Importantly, this transaction is a testament to the hard work and dedication of our employees. I look forward to working with Lumentum leadership to ensure a smooth transition as we begin an exciting new chapter as one company."

***Potential Conflicts of Interest***

38.  The breakdown of the benefits of the deal indicate that NeoPhotonics insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of NeoPhotonics.

39. Notably, Company insiders, currently own large, illiquid portions of Company stock, company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction as follows:

**Equity Interests of NeoPhotonics' Executive Officers and Non-Employee Directors**

| Name | Shares #[1] | Shares $ | Options # | Options $ | RSUs # | RSUs $ | PRSUs Target | PRSUs Target $ | SAUs # | SAUs $ | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Timothy S. Jenks | 557,334 | 8,917,344 | 289,573 | 2,323,216 | 270,466 | 4,327,456 | 116,700 | 1,867,200 | — | — | $17,435,216 |
| Elizabeth Eby | 366,334 | 5,861,344 | 23,063 | 233,167 | 111,066 | 1,777,056 | 50,850 | 813,600 | — | — | 8,685,167 |
| Raymond Cheung, Ph.D. | — | — | — | — | 111,066 | 1,777,056 | 50,850 | 813,600 | 75,000 | 816,750 | 3,407,406 |
| Wupen Yuen, Ph.D. | 166,897 | 2,670,352 | 217,000 | 2,069,150 | 117,966 | 1,887,456 | 53,150 | 850,400 | — | — | 7,447,358 |
| Bradford Wright | — | — | — | — | 135,900 | 2,174,400 | — | — | — | — | 2,174,400 |
| Charles J. Abbe | 135,063 | 2,161,008 | 32,748 | 225,379 | 4,621 | 73,936 | — | — | — | — | 2,460,323 |
| Bandel L. Carano | 16,082 | 257,312 | 78,691 | 739,953 | 4,621 | 73,936 | — | — | — | — | 1,071,201 |
| Kimberly Y. Chainey | — | — | 7,641 | 44,547 | 4,621 | 73,936 | — | — | — | — | 118,483 |
| Yanbing Li, Ph.D. | 15,983 | 255,728 | 35,266 | 328,283 | 4,621 | 73,936 | — | — | — | — | 657,947 |
| Rajiv Ramaswami, Ph.D. | 40,438 | 647,008 | 68,292 | 628,764 | 4,621 | 73,936 | — | — | — | — | 1,349,708 |
| Michael J. Sophie | 11,662 | 186,592 | 11,373 | 72,313 | 4,621 | 73,936 | — | — | — | — | 332,841 |
| Ihab Tarazi | 29,746 | 475,936 | 53,320 | 459,010 | 4,621 | 73,936 | — | — | — | — | 1,008,882 |
| Sheri L. Savage | — | — | 7,457 | 44,518 | 4,685 | 74,960 | — | — | — | — | 119,478 |

40. In addition, certain employment agreements with certain NeoPhotonics executives, entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows

***Golden Parachute Compensation***

| Name[1] | Cash ($)[2] | Equity ($)[3] | Other ($)[4] | Total ($) |
|---|---|---|---|---|
| Timothy S. Jenks | 2,329,248 | 6,194,656 | 273,156 | 8,797,060 |
| Elizabeth Eby | 673,626 | 1,975,456 | 112,805 | 2,761,887 |
| Raymond Cheung, Ph.D. | 1,408,736 | 2,590,656 | 118,569 | 4,117,961 |
| Wupen Yuen, Ph.D. | 1,361,216 | 2,737,856 | 114,114 | 4,213,186 |

41. The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the

negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

42. Thus, while the Proposed Transaction is not in the best interests of NeoPhotonics, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

43. On December 1, 2021, the NeoPhotonics Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

<u>Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction</u>

44. Specifically, the Preliminary Proxy Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Preliminary Proxy Statement fails to disclose:

    a. Further information as to why the sales process was allowed to drag on for five years;

    b. The specific powers of the Strategic Committee, including if it had the power to approve or veto any strategic alternatives;

    c. The specific date range for which each member of the Strategic Committee listed in the Preliminary Proxy Statement was a member of that committee;

    d. Whether the confidentiality agreements entered into by the Company with Lumentum differed from any other unnamed confidentiality agreement entered

     into between the Company and potentially interested third parties (if any), and if so, in all specific manners;

  e. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and potentially interested third parties throughout the sales process, including Lumentum, would fall away; and

  f. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of Plaintiff and Company stockholders.

*<u>Omissions and/or Material Misrepresentations Concerning NeoPhotonics' Financial Projections</u>*

45. The Preliminary Proxy Statement fails to provide material information concerning financial projections for NeoPhotonics provided by NeoPhotonics management and relied upon by Union Square in its analyses. The Preliminary Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.

46. Notably the Preliminary Proxy Statement reveals that as part of its analyses, Union Square reviewed, "Reviewed certain financial projections and forecasts prepared by the management of NeoPhotonics and approved for Union Square's use by NeoPhotonics."

47. Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that NeoPhotonics management provided to the Board and Union Square. Courts have uniformly stated that "projections … are probably among the most

highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

48. With regard to the *Long Range Plan and Related Extrapolations* projection set prepared by NeoPhotonics Management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

   a. Non-GAAP Gross Profit, including all underlying necessary inputs and assumptions, including specifically: total non-GAAP cost of goods sold (including the specific adjustments made for stock-based compensation, amortization of intangibles, depreciation of acquisition-related fixed asset step-ups, EOL inventory write-downs, accelerated depreciation, and restructuring charges);

   b. Non-GAAP Operating Profit before SBC, including all underlying necessary inputs and assumptions, including specifically: Non-GAAP Operating Expenses, amortized integration, accelerated depreciation, restructuring and the specific "other non-recurring charges" utilized;

   c. Adjusted EBITDA, including all underlying necessary inputs and assumptions, including specifically: depreciation and amortization;

   d. Non-GAAP Operating Profit after SBC, including all underlying necessary inputs and assumptions, including specifically: the impact of stock-based compensation;

   e. Non-GAAP Net Income, including all underlying necessary inputs and assumptions, including specifically: interest and the specific "other expenses and tax expenses" utilized;

  f. Non-GAAP Unlevered Net Income, including all underlying necessary inputs and assumptions, including specifically: interest expense and the impact of the tax shield on interest expense;

  g. Unlevered Free Cash Flow, including all underlying necessary inputs and assumptions, including specifically: capital expenditures, the net impact of depreciation, amortization and other adjustments and changes in working capital and deferred taxes;

  h. Pre-tax Profit for Cash Tax Provision, including all underlying necessary inputs and assumptions, including specifically: the specific impacts and assumptions underlying the determination regarding the impact of 33% of SBC in Q4 CY2021, trending down to 21% in CY2026 based on Company management's view on the non-tax deductible portion of current compensation plans for the purposes of calculating estimated annual NOL usage; and

  i. Tax Benefit of NOL, including all underlying necessary inputs and assumptions, including specifically: the specific impacts and assumptions underlying the determination the utilized tax rate of 21%.

49. The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

50. This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

51. Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Union Square's financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Union Square*

52.     In the Preliminary Proxy Statement, Union Square describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

53.     With respect to the *Selected Publicly Traded Companies Analysis*, the Preliminary Proxy Statement fails to disclose the following:

  a. The specific metrics for each selected company analyzed; and
  b. The specific inputs and assumptions used to determine the utilized Enterprise Value/CY2021E Revenue (Management Forecast) multiple range of 2.0x – 2.4x;
  c. The specific inputs and assumptions used to determine the utilized Enterprise Value/CY2022E Revenue (Management Forecast) multiple range of 1.8x – 2.2x;
  d. The specific inputs and assumptions used to determine the utilized Enterprise Value/CY2023E Revenue (Management Forecast) multiple range of 1.7x – 2.1x;
  e. The specific inputs and assumptions used to determine the utilized Enterprise Value/ CY2022E Adjusted EBITDA (Management Forecast) multiple range of 10.7x – 12.7x; and
  f. The specific inputs and assumptions used to determine the utilized Enterprise Value/ CY2023E Adjusted EBITDA (Management Forecast) multiple range of 8.3x – 10.3x.

54.     With respect to the *Precedent Transactions Analysis*, the Preliminary Proxy Statement fails to disclose the following:

   a.  The specific metrics for each precedent transaction analyzed;

   b.  The date on which each precedent transaction closed;

   c.  The aggregate value of each precedent transaction;

   d.  The specific inputs and assumptions used to determine the utilized Enterprise Value/LTM Revenue multiple range of 1.6x – 3.1x; and

   e.  The specific inputs and assumptions used to determine the utilized Enterprise Value/NTM Revenue (Consensus Estimates) multiple range of 1.5x – 2.9x.

55.  With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

   a.  The terminal values in calendar year 2026 calculated in the analysis;

   b.  The specific inputs and assumptions used to determine the utilized discount rate range of 9.3% to 11.3%;

   c.  NeoPhotonics' weighted average cost of capital;

   d.  The specific inputs and assumptions used to determine the utilized perpetuity growth rate range of 3.5% to 4.5%;

   e.  The specific amount of net cash used to adjust the terminal value; and

   f.  The specific inputs and assumptions used to determine the utilized 21% corporate tax rate.

56.  With respect to the *Research Analyst Price Targets for NeoPhotonics Corporation* Analysis, the Preliminary Proxy Statement fails to disclose the following:

   a.  The specific price targets utilized; and

   b.  The identity for the analysts and/or firms that generated the utilized price targets.

57.  These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

58.  Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value

and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public NeoPhotonics stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

### Violations of Section 14(a) of the Exchange Act

### (Against All Defendants)

59. Plaintiff repeats all previous allegations as if set forth in full herein.

60. Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

61. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

62. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement

in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

63. The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

64. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

65. The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

66. The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

67. Plaintiff repeats all previous allegations as if set forth in full herein.

68. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants

knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

69. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

70. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of NeoPhotonics' business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

71. The Individual Defendants acted as controlling persons of NeoPhotonics within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause NeoPhotonics to engage in the wrongful conduct complained of herein. The Individual Defendants controlled NeoPhotonics and all of its employees. As alleged above, NeoPhotonics is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to comply with the Exchange Act to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: December 8, 2021

**BRODSKY & SMITH**

By: _____
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*